UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MELINDA L. JOHNSON,

                              Plaintiff,

        -against-

THE HARTFORD,

                              Defendant.

**OPINION AND ORDER**

22-CV-06394 (PMH)

PHILIP M. HALPERN, United States District Judge:

Melinda L. Johnson ("Plaintiff") commenced this action on July 27, 2022, pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA") against the Hartford Life Insurance Company ("Hartford" or "Defendant") arising from Defendant's refusal to pay long term disability ("LTD") benefits due under an ERISA employee welfare benefit plan ("Plan"). (Doc. 1, "Compl."). Defendant filed its Answer to the Complaint on September 30, 2022. (Doc. 13).

Before the Court are the parties' cross motions for summary judgment. The parties, with the Court's leave, filed the Bates-stamped administrative record on December 9, 2022. (Doc. 16; Doc. 17).[1] Defendant filed, pursuant to the Court's briefing schedule, its motion for summary judgment on June 8, 2023. (Doc. 27; Doc. 28; Doc. 29, "Def. Br."; Doc. 30, "56.1 Stmt."). Plaintiff, on June 16, 2023, filed her motion for summary judgment and opposition to Defendant's motion (Doc. 35; Doc. 36, "Pl. Aff."; Doc. 37; Doc. 38; Doc. 39, "Pl. Br."), and the motions were fully briefed with the filing of Defendant's reply (Doc. 32, "Reply").

For the reasons set forth below, Defendant's motion for summary judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED.

---

[1] Citations to the administrative record refer to the Bates-stamped numbers with the prefix "AR."

**BACKGROUND**

The Court recites the facts herein only to the extent necessary to adjudicate the motions for summary judgment and draws them from the pleadings, Defendant's Rule 56.1 Statement, and the admissible evidence proffered by the parties. Unless otherwise indicated, the facts cited herein are undisputed.[2]

I. <u>Plaintiff's Claim for Long-Term Disability Benefits</u>

Plaintiff was employed by SDTC – The Center for Discovery ("SDTC") as a registered nurse and was enrolled in a long-term disability benefit program. (56.1 Stmt. ¶ 7; Doc. 17-7 at AR_02125, 02130). Group policy GLT-677071 (the "LTD Policy"), issued by Hartford to SDTC, defines "Disability" as follows:

> **Disability** or **Disabled** means You are prevented from performing one or more of the Essential Duties of: 1) Your Occupation during the Elimination Period; 2) Your Occupation, for the 24 month(s)

---

[2] Plaintiff filed a separate 56.1 Statement in support of her motion for summary judgment when she filed her reply papers. (Doc. 39-1). Plaintiff's 56.1 Statement was replete with argument and did not include citations to evidence in violation of Local Civil Rule 56.1(d). (*Id.*). Because Plaintiff did not serve her Rule 56.1 Statement in accordance with the Court's Individual Practices, Plaintiff's 56.1 Statement did not include any responses from Defendant in violation of Rule 4(E) of the Court's Individual Practices. Separately, Plaintiff failed to respond to Defendant's timely served Rule 56.1 Statement. Defendant filed a letter-motion on June 1, 2023 seeking leave to move to strike Plaintiff's 56.1 Statement, arguing that Plaintiff failed to comply with the Local Civil Rules and the Court's Individual Practices. (Doc. 26). On Plaintiff's application after her failure to timely respond to Defendant's letter-motion, the Court extended Plaintiff's time to respond to June 16, 2023. (Doc. 34). Plaintiff again failed to timely respond, and the Court further extended the time for Plaintiff to respond to the letter-motion to June 20, 2023. (Doc. 41). Plaintiff failed to respond by June 20, 2023. The Court held a telephonic conference regarding Defendant's motion to strike on July 10, 2023. (Doc. 47, "Jul. 10, 2023 Conf. Tr."). The Court granted the motion to strike Plaintiff's 56.1 Statement based on Plaintiff's failure to respond to Defendant's letter-motion and deemed Defendant's 56.1 Statement, because Plaintiff failed to respond to it, admitted for all purposes. (*Id.* at 6:24-7:4). Plaintiff filed an interlocutory appeal on August 8, 2023 seeking review of the Court's Order on Defendant's motion to strike. (Doc. 45). The Court finds Plaintiff's interlocutory appeal to be frivolous. *See Carroll v. Trump*, 88 F.4th 418, 433 (2d Cir. 2023) ("district courts may retain jurisdiction notwithstanding appeal if the appeal is frivolous"); *Rimini v. J.P. Morgan Chase & Co.*, No. 22-CV-07768, 2022 WL 17345053 (S.D.N.Y. Nov. 30, 2022) (holding that a plaintiff's appeal of the court's order denying a motion to strike was "patently frivolous"). Given that Defendant's 56.1 Statement was admitted for all purposes, there is no genuine dispute as to any material fact and Defendant is entitled to summary judgment. Notwithstanding this reality and out of fairness to Plaintiff, the Court has reviewed the full administrative record (Doc. 17) in analyzing the parties' motions for summary judgment.

> following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your indexed Pre-disability Earnings; and 3) after that, Any Occupation.

(*Id.* ¶ 1 (emphasis in original); Doc. 17-1 at AR_00017). The LTD Policy defines the "Elimination Period" to be 180 days. (Doc. 17-1 at AR_00007). The LTD Policy goes on to define "Any Occupation" as follows:

> **Any Occupation** means any occupation for which You are qualified by education, training or experience, and that has an earnings potential greater than the lesser of: 1) The product of Your Indexed Pre-disability Earnings and the Benefit Percentage; or 2) The Maximum Monthly Benefit.

(56.1 Stmt. ¶ 3 (emphasis in original); Doc. 17-1 at AR_00017). The product of Plaintiff's indexed pre-disability earnings ($5,123.05) and the LTD Policy's benefit percentage (60%) is $3,073.83, which is less than the LTD Policy's maximum monthly benefit of $5,000. (*Id.* ¶ 4). The LTD Policy grants Hartford "full discretion and authority to determine the eligibility for benefits and to construe and interpret all terms and provisions of The Policy," (*Id.* ¶ 5).

Plaintiff filed a claim for LTD benefits in October 2008 due to the side effects of medication prescribed following smoke inhalation occurring during work on August 31, 2007 when a unit caught fire causing noxious fumes. (*Id.* ¶ 8; Doc. 17-7 at AR_02116). Plaintiff reported that the medication's side-effects included "edema, swelling/pain of feet, acid reflux, thinning of skin, and bladder fistula." (*Id.*). Hartford approved Plaintiff's claim and she received LTD benefits throughout the 24-month "Your Occupation" period. (*Id.* ¶ 9; Doc. 17-1 at AR_00066). Hartford also approved Plaintiff's claim for benefits under the "Any Occupation" period beginning September 2010 and placed her claim on an annual review cycle. (*Id.*).

II. Hartford's Surveillance of Plaintiff and Subsequent Interview

Plaintiff reported to Hartford in a January 2018 claimant questionnaire that she was disabled due to "bilateral foot pain with edema causing an unsteady abnormal gait", "chronic

3

debilitating headaches from neck and spinal injury", and that she as "unable to sit, stand, or walk for [a] long period of time." (*Id.* ¶ 11). Also in January 2018, Plaintiff told her psychiatrist—Dr. Jonathan Rudnick—that she had flown across the country, to and from Arizona. (*Id.* ¶ 12). Hartford retained a private investigator who conducted surveillance of Plaintiff's activities on March 20-21, 2018 and April 9-10, 2018. (Doc. 17-5 at AR_00653-00666). The surveillance showed Plaintiff entering and exiting her car, driving, running errands for several hours, walking, and dining out with no apparent difficulty. (*Id.*). Hartford then interviewed Plaintiff on May 8, 2019 at her attorney's office. (56.1 Stmt. ¶ 16). Plaintiff reported, at the interview, that two disabling medical conditions prevented her from working: "a neck and spinal injury" and "severe migraine headaches." (*Id.* ¶ 17). Plaintiff confirmed the identities of her treating providers, and Hartford sought contemporaneous treatment records. (*Id.* ¶ 20).

III.   Independent Medical Examination of Dr. Goodman

Hartford obtained an independent medical examination of Plaintiff on October 24, 2018, which was conducted by Dr. David A. Goodman, M.D. (*Id.* ¶ 60). Dr. Goodman reported that Plaintiff acknowledged the functional capacity to perform the following activities:

> She is able to perform her own personal hygiene and grooming. She is able to dress herself. She is able to prepare meals for her family, noting that sometimes she needs assistance in reaching or bending for things. She washes the dishes, doesn't use the dishwasher. She will do simple light housekeeping tasks such as folding the laundry, putting the laundry away, picking up clothes (including use of a grabber to pick things up from the floor as she is unable to bend down to do so), goes food shopping for the family, holding onto the grocery cart for support, unloads light packages from her car, and goes out for breakfast on the weekends and twice during the week may go out for dinner.

(*Id.* ¶ 61). Dr. Goodman conducted a physical examination and concluded that Plaintiff:

- had a gait that "appears appropriate for her size;"
- was "able to walk heel/toe with no apparent difficulty;"

4

- was "able to squat slightly with no apparent difficulty;"

- was "able to rotate her torso bilaterally without apparent difficulty;" performed straight leg lifting bilaterally in the supine position "to 30 degrees with her knees fully extended" and "in the sitting position up to 45 degrees for 5 seconds without difficulty" (but reported "being unable to fully extend her knees in the sitting position because 'it pulls my lower back and neck'");

- "demonstrated excellent dorsiflexion strength of her feet;" demonstrated normal active range of motion of the shoulders "below shoulder height for forward flexion and abduction" (and declined to lift her hands above shoulder height for concerns it would cause pain and headaches);

- "demonstrated full range of motion with good strength to gross testing in elbows, wrists and hands;

- "demonstrated good dexterity" of her hands and fingers;

- "showed no obvious deficits in intellect, memory, affect, judgment and orientation" in a mini-mental status examination; and

- with some apparent difficulty, was able to bend forward at the waist, side bend, and get up onto and down from the examination table unassisted.

(*Id.* ¶ 64). Dr. Goodman found a "discrepancy between [Plaintiff's] claimed stress or disability," and "the objective findings," and concluded that Plaintiff's "complaints are grossly in excess of physical findings." (*Id.* ¶ 68). He supported this finding with the following observations.

- *First*, when he examined Plaintiff's cervical spine, her "range of motion was diffusely limited actively, with apparent stiffness of movements," but when he "discreetly observed" her movements throughout the visit, she "demonstrated no cervical spine guarding or stiffness in the course of her generalized movements." (*Id.* ¶ 66).

- *Second*, he reported: "MRI findings of her spine reveal only mild degenerative findings which do not support the degree of symptomology and functional impairment which she expresses." (*Id.* ¶ 68).

- *Third*, he reported her "voluntary control of symptomology is suggested by discrete versus direct observations of cervical range of motion" and "straight leg lifting with ability to fully extend the knees without difficulty against gravity in the supine positions yet claiming to be unable to do this maneuver in the sitting position." (*Id.*).

- *Fourth*, he stated: "She also several times noted how difficult it was to merely enter and sit in a car, yet on surveillance she readily performed this activity with no apparent difficulty." (*Id.*).

5

Dr. Goodman opined that it was "more than likely that the examinee is engaging in malingering with respect to the nature and extent of her professed physical functional impairment." (*Id.*). Dr. Goodman concluded that Plaintiff was limited to lifting, carrying, pushing, or pulling "up to 20 pounds occasionally, 10 pounds frequently, and 5 pounds constantly, and was restricted from bending, stopping crawling and climbing." (*Id.* ¶ 67). Dr. Goodman further concluded that, subject to these restrictions and limitations, Plaintiff had the functional capacity to perform full time sedentary work activity. (*Id.*).

IV.  Independent Peer Review of Dr. Antoinette Acenas

Hartford also obtained an independent peer review from Dr. Antoinette Acenas, M.D. to determine if Plaintiff was functionally impaired due to anxiety or depression. (*Id.* ¶ 70). Dr. Acenas called Plaintiff's psychiatrist, Dr. Manouchehr Lavian, to discuss Plaintiff's condition. (*Id.* ¶¶ 71-72). She reported that "Dr. Lavian stated that [Plaintiff]'s multiple medical conditions, particularly her chronic pain, was causing her to be impaired from working and resulting [in] feelings of frustration, feeling upset, depressed and anxious since she would really like to return to work as a nurse but was not able to." (*Id.* ¶ 72). Dr. Acenas further reported that Dr. Lavian considered Plaintiff "functionally impaired from working" due to Xanax and Buspar medications, but confirmed that he was only seeing her every two to three months to maintain her on the same medications and did not report any objective findings corroborating his assertion that Plaintiff was "functionally impaired." (*Id.*). Dr. Acenas concluded that, from a psychiatric perspective, there was "a paucity of objective findings such as mental status examinations and/or psychological tests" supporting any functional impairment due to medications, anxiety or depression. (*Id.* ¶ 74).

V.  Hartford's Termination of Plaintiff's Long-Term Disability Benefits

Hartford conducted an employability analysis on November 14, 2018 and identified several occupations for which Plaintiff is qualified, that are within Plaintiff's physical and mental capabilities, and that meet or exceed the LTD Policy's required earnings potential of $3,073.82 per month. (*Id.* ¶ 75). Hartford notified Plaintiff, by letter dated November 29, 2018, that her claim for LTD benefits had been terminated effective November 27, 2018, as "[t]he weight of the medical evidence in your claim file supports that you are physically and mentally capable of performing Any Occupation on a full time basis." (*Id.* ¶ 76).

VI. Plaintiff's Administrative Appeal

Plaintiff administratively appealed Hartford's decision by letter dated May 24, 2019. (*Id.* ¶ 77). Plaintiff submitted a letter dated May 24, 2019 from her chiropractor, Dr. Scott Rosa, D.C., opining that Plaintiff "cannot work in any functional capacity both related to the injury to her neck as well as subsequent injuries that have adversely affected her feet and gait." (*Id.* ¶ 78). Dr. Rosa reported that Plaintiff "continues to treat with me for chronic recurring headaches, often debilitating, chronic recurring neck pain, chronic recurrent low back pain as well as a constellation of other symptoms" but did not attach any treatment records to his letter. (*Id.*).

Hartford obtained an independent peer review on June 30, 2019 from Dr. Krishna Padiyar, M.D., M.P.H. (*Id.* ¶ 79). Dr. Padiyar reviewed Plaintiff's medical history and records dating back decades and concluded: "there is no clinical or diagnostic documentation that supports impairment that would be continuing into 11/28/2018," as "[t]he evidence does not suggest that she suffers from a medical condition or combination of conditions of such severity to warrant the placement of restrictions/limitations on her activities." (*Id.*). Dr. Padiyar observed that Plaintiff's "complaints of pain that are functionally limiting are not supported by the evidence," because "there are no structural/neurological/metabolic findings to support that the pain as a result of the multiple

7

conditions would impact the claimant's ability to function in a work environment." (*Id.* ¶ 79; Doc. 17-5 at AR_00538).

Hartford also obtained an independent peer review on June 30, 2019 from Dr. Mary Beth Valiulis, M.D., who concluded: "there is insufficient medical evidence supporting functional impairment, limitations nor restrictions from a psychiatric perspective from 11/28/18 to the present" and that "the medical evidence does not support functional impairment, restrictions and/or limitations of the claimant from 11/28/18 to the present." (56.1 Stmt. ¶ 80). Dr. Valiulis concluded that, "from a psychiatric perspective, the claimant is capable of performing work functions eight hours per day 40 hours per week" because "there was no evidence that Plaintiff suffered from psychiatric impairment that would impact her ability to function in a work environment." (*Id.*). Dr. Valiulis called and left messages with Dr. Lavian twice, in an attempt to discuss Plaintiff's mental health and functional capacity. (*Id.* ¶ 81). Dr. Lavian did not return Dr. Valiulis's calls, so Hartford sent a copy of her report to Dr. Lavian on July 10, 2019, and asked him to respond if he disagreed with the conclusions "by indicating which areas of the attached report you agree with, which areas you disagree with, and any clinical evidence or observations in support of your opinion." (*Id.*). Dr. Lavian did not respond. (*Id.*).

Hartford notified Plaintiff, by letter dated July 29, 2019, that it had completed review of her administrative appeal, and "upon completion of a comprehensive review of the information in her claim filed viewed as a whole," upheld its decision to terminate Plaintiff's claim for LTD benefits. (*Id.* ¶ 82). Hartford summarized Plaintiff's work history, medical history, discussed the findings of the independent medical examination and peer reviews, and determined "that as of 11/28/2018 Plaintiff maintained the functional capacity to consistently perform full-time work. As occupations have been identified for which she is capable of and qualified to perform, she is not

Disabled from Any Occupation as required by the Policy and we are maintaining the prior decision to terminate benefits beyond 11/27/2018." (*Id.*).

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-3875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[3] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343, 2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023); *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)).

The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. *Porter v. Dartmouth-Hitchcock Medical Center*, No. 92 F.4th 129, 147 (2d Cir. 2024) ("[T]he court may not make credibility

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

determinations or weigh the evidence." (quoting *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010))). The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Further, "while the court is required to review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Porter*, 92 F.4th at 147 (quoting *Kaytor*, 609 F.3d at 545). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir.

2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

## ANALYSIS

I.   The Burden of Proof

"A claim under an ERISA plan stands or falls by the terms of the plan, § 1132(a)(1)(B), a straightforward rule of hewing to the directives of the plan documents that lets employers establish a uniform administrative scheme, with a set of standard procedures to guide processing of claims and disbursement of benefits." *Cannady v. Bd. of Trustees of Boilermaker-Blacksmith Nat'l Pension Tr.*, No. 20-3141, 2022 WL 151298, at *2 (2d Cir. Jan. 18, 2022) (citing *Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, 555 U.S. 285, 300 (2009)). "*De novo* review is the default standard of review for the denial of ERISA claims 'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Tyll v. Stanley Black & Decker Life Ins. Program*, 857 F. App'x 674, 676 (2d Cir. 2021) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)); *see also Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 108 (2d Cir. 2005) ("We review a plan administrator's decision *de novo* unless the plan vests the administrator with discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case we use an abuse of discretion standard.").

The LTD Policy grants Hartford "full discretion and authority to determine the eligibility for benefits and to construe and interpret all terms and provisions of The Policy," (56.1 Stmt. ¶ 5). "Where, as here, 'the relevant plan vests its administrator with discretionary authority over benefits decisions the administrator's decisions may be overturned only if they are arbitrary and capricious.'" *Cannady*, 2022 WL 151298, at *2 (quoting *Roganti v. Metro Life Ins. Co.*, 786 F.3d 201, 210 (2d Cir. 2015)). Defendant's burden of proof on a motion for summary judgment requires it "to demonstrate no genuine dispute of material fact as to whether its challenged eligibility decision was arbitrary and capricious." *Kruk v. Metro. Life Ins. Co.*, 567 F. App'x 17, 19 (2d Cir. 2014). "Under the arbitrary and capricious standard, 'a court may overturn a plan administrator's decision to deny benefits only if the decision was without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Id.* (quoting *Celardo v. GNY Auto. Dealers Health & Welfare Tr.*, 318 F.3d 142, 146 (2d Cir. 2003)); *see also Rognati* 786 F.3d at 212 ("[I]n cases where the evidence conflicts, an administrator's conclusion drawn from that evidence that a claim should be denied will be upheld unless the evidence points so decidedly in the claimant's favor that it would be unreasonable to deny the claim on the basis of the evidence cited by the administrator."). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator and] . . . requires more than a scintilla but less than a preponderance." *Celardo*, 786 at 212. Thus, the "scope of review is narrow," and the Court is "not free to substitute [its] own judgment for that of [the administrator] as if [the Court] were considering the issue of eligibility anew." *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 83 (2d Cir. 2009). Plan administrators are not "required to accord special deference to the conclusion of [the claimant's] physicians." *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 141 (2d Cir. 2010); *see also Black & Decker Disability Plan v. Nord*, 538 U.S. 822,

12

834 (2003) ("[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.").

Plaintiff concedes that the arbitrary and capricious standard of review governs her claims. (Pl. Br. ¶ 16). Plaintiff argues that Defendant has failed to meet its burden in identifying "any change in Plaintiff's medical condition that would support a finding that she could suddenly perform 'any occupation.'" (*Id*. ¶ 19). Defendant argues that Plaintiff misstates the burden of proof. (Reply at 2-3). The Second Circuit, in *Kruk,* held that once an administrator demonstrates "evidentiary support for its challenged decision, [claimant] [does] bear the burden of coming forward with specific facts showing a genuine material issue for trial, i.e., facts that could support a finding that [administrator] made its decision arbitrarily and capriciously." 567 F. App'x at 19. Likewise here, Defendant initially bears the burden of demonstrating evidentiary support for its challenged decision to terminate Plaintiff's LTD benefits, at which point the burden of production shifts to Plaintiff to come forward with specific facts that could support a finding that Defendant's decision was arbitrary and capricious. *Id.*

II. Defendant's Decision to Terminate Plaintiff's LTD Benefits

Plaintiff argues that Defendant's decision was arbitrary and capricious because "the Defendant cannot identify any change in Plaintiff's medical condition that would support a finding that she could suddenly perform 'any occupation.'" (Pl. Br. ¶ 19). Defendant points to a number of undisputed facts which support a finding that Plaintiff could perform any occupation. (Reply at 3-5). It is undisputed that as of November 2018, Plaintiff had the capacity to: keep her balance on stable terrain; run multiple errands at multiple locations in a single outing; get in and out of the

13

car; drive and pump gas on her own; clean and dress herself; fold laundry; and fly to and from Arizona. (56.1 Stmt. ¶ 20). Plaintiff fails to specifically controvert any of the findings of Dr. Goodman in his independent medical examination, which concluded that Plaintiff has the capacity to sit for 50 minutes at a time for 8 hours a day, stand for 10 minutes at a time for 8 hours a day, and walk for 10 minutes at a time for 8 hours a day," and that Plaintiff could perform "full time sedentary work activity." (Doc. 17-5 at AR_00816-00825). Nor does Plaintiff specifically controvert the conclusions reached by Dr. Acenas, Dr. Valiulis, or Dr. Padiyar in their independent peer reviews of Plaintiff's medical records.

Plaintiff argues that Defendant's decision was arbitrary and capricious because Defendant relied on "file-reviewing consultants" whose conclusions were contradicted by Plaintiff's treating physicians. (Pl. Br. ¶ 13). This line of argument has been squarely rejected by the Supreme Court in *Black & Decker Disability Plan v. Nord*, which held that an administrator need not "accord special deference to the opinions of treating physicians." 538 U.S. 822, 831 (2003). The Supreme Court went further to note that ERISA "does not impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Id.* "An insurance company must be allowed to employ a system which will prevent awarding benefits to those whose symptoms are exaggerated or faked." *Greenberg v. Unum Life Ins. Co. of Am.*, No. 03-CV-01396, 2006 WL 842395, at *10 (E.D.N.Y. Mar. 27, 2006) "As such, it is reasonable for the company to prefer objective verifiable evidence over the self-reported symptoms of the insured." *Id.* The Court finds that Defendant acted within its discretion when it credited the opinions of Dr. Goodman, Dr. Acenas, Dr. Valiulis, and Dr. Padiyar in concluding that Plaintiff could perform "Any Occupation" as that term is defined by the Plan. *See Wallace v. Grp. Long Term Disability Plan for Emps. of Tdameritrade Holding Corp.*, No. 21-1019, 2022 WL 2207926, at *3 (2d Cir. June 21, 2022)

("Hartford acted within its discretion when it credited the opinions of four independent medical consultants to conclude that Wallace could work a full-time job as defined under the benefits plan").[4] Substantial evidence in the form of an independent medical examination report and multiple independent peer review reports support Defendant's determination.

Accordingly, the Court holds that Defendant's November 2018 termination of Plaintiff's LTD benefits was not arbitrary and capricious.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED.

The Clerk of Court is respectfully directed to terminate the motions pending at Doc. 27, Doc. 35, Doc. 36, Doc. 37, Doc. 38 and close this case.

**SO ORDERED.**

Dated: White Plains, New York
       March 12, 2024

_____
Philip M. Halpern
United States District Judge

---

[4] Plaintiff argues that the private investigator's report describing surveillance video of Plaintiff driving her car, running errands, and performing other tasks "is neither factual or definitive." (Pl. Br. ¶ 6). The Second Circuit, in *Wallace*, rejected a similar argument that an administrator's decision was arbitrary and capricious because it relied in part on surveillance video of the claimant. 2022 WL 2207926, at *4 ("As an initial matter, Wallace fails to explain persuasively how the 2011 and 2012 surveillance footage is not time-relevant. In any event, Hartford and its consultants did not rely solely on the video footage. They also properly considered Wallace's medical records to find that Wallace could work a 40-hour work week."). Here too, Defendant considered the surveillance report of Plaintiff along with her medical records to find that she could perform "Any Occupation" as that term was defined in the Plan. *See Ingravallo v. Hartford Life & Accident Ins. Co.*, 563 F. App'x 796, 800 (2d Cir. 2014) (holding that plan administrator did not abuse its discretion when it denied benefits after considering video surveillance with other "clinical information").